## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**KAEUN KIM,**

Plaintiff,

v.

**ESSEX COUNTY PROSECUTOR'S OFFICE;**

**JOSEPH GIORDANO, individually and in his official capacity;**

**MIRA OHM, individually and in her official capacity;**

**JOHN DOE PROSECUTORS 1–3, individually and in their official capacities;**

**PRUDENTIAL FINANCIAL, INC.;**

**ROBERT BUHRMEISTER, individually and in his official capacity;**

**MICHAEL SACCENTO, individually and in his official capacity;**

**JOHN STRANGFELD, individually and in his official capacity;**

**CAROLINE FEENEY, individually and in her official capacity;**

**and JOHN DOE DEFENDANTS 1–10,**

Defendants.

RECEIVED

MAR 23 2026

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

Civil Action No.: _____

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

## 42 U.S.C. §§ 1983 and 1985(3) — Fourteenth Amendment

**Equal Protection | Due Process | Malicious Prosecution | Civil Conspiracy**

**DAMAGES-PRIMARY COMPLAINT — ALTERNATIVE STAY REQUEST PURSUANT TO**

**Deakins v. Monaghan, 484 U.S. 193 (1988) & Wallace v. Kato, 549 U.S. 384 (2007)**

## JURY TRIAL DEMANDED

**Plaintiff:** KAEUN KIM, Pro Se

P.O. Box 7084 | New York, NY 10116 | (718) 908-9008 | fceakkim@aol.com

**Principal Defendants:**

Essex County Prosecutor's Office — 50 W. Market Street, Newark, NJ 07102

Joseph Giordano — Former Assistant Prosecutor, ECPO

Mira Ohm — Assistant Prosecutor, ECPO

Prudential Financial, Inc. — 751 Broad Street, Newark, NJ 07102

Robert Buhrmeister — Prudential Security Officer

Michael Saccento — Prudential Executive

John Strangfeld — Former Prudential CEO

Caroline Feeney — Prudential Executive

## I. PRELIMINARY STATEMENT

Plaintiff Kaeun Kim brings this action under 42 U.S.C. §§ 1983 and 1985(3), and the Equal Protection and Due Process Clauses of the Fourteenth Amendment, against the Essex County Prosecutor's Office, individual prosecutors acting in their personal and official capacities, and Prudential Financial, Inc. and its officers, who acted in concert with state actors under color of state law. This is a damages-primary action. Plaintiff does not seek to enjoin the ongoing state criminal proceeding. Plaintiff seeks

compensatory and punitive damages for past and ongoing constitutional violations that have caused severe and irreparable harm over the course of nearly nine years.

This action arises from a malicious criminal prosecution — ongoing since April 2018 — sustained through the deliberate use of fabricated digital video evidence and the active suppression of the original recording device throughout the entire duration of the proceedings. The prosecution was initiated following a visit by Plaintiff, a former Prudential employee, to Prudential's Newark headquarters on April 13, 2018. Prudential security officer Robert Buhrmeister and executives Michael Saccento, John Strangfeld, and Caroline Feeney provided prosecutors with seven digital video files, representing them as authentic surveillance recordings. Those files became the sole material evidentiary basis for the charge of terroristic threats.

Independent forensic analysis by Dr. Doowon Jeong, Ph.D., Associate Professor of Forensic Sciences at Sungkyunkwan University (Seoul, Republic of Korea) and Director of its Cyber Security & Digital Forensic Laboratory, has established with technical certainty that six of the seven files are not authentic original recordings. They are secondary-processed files — screen-capture re-encodings — produced in a Windows 7 SP1 computing environment using Microsoft Expression Encoder (version 4.0.4276.0), created between three and seven days after April 13, 2018. The WMFSDK version string `12.0.7601.17514` embedded in each of the six WMV files is the categorical, technically verifiable binary fingerprint of that specific software environment, confirmed by virtual machine reconstruction. It is wholly inconsistent with direct DVR export. **Dr. Jeong's sworn Declaration (Exhibit A) and Forensic Examination Report (Exhibit B), executed December 3, 2025, Seoul, Republic of Korea, are attached to and incorporated into this complaint.**

The prosecution was further tainted by structural judicial conflict of interest. Judge Mayra Tarantino — who had previously represented Prudential Financial — presided over the early proceedings without disclosure of her conflict. During her tenure, she denied every motion to produce the original DVR, pressured Plaintiff to accept a plea

or civil restraining order favorable to Prudential, and issued material adverse rulings that successor counsel later relied upon as binding. Her recusal, and the subsequent recusal of Prosecutor Joseph Giordano, came only after the damage was done. Successor Judge Mark Ali and Assistant Prosecutor Mira Ohm continued the same pattern: refusing all authentication motions, refusing to compel DVR production, conducting a bench trial on unverified footage.

This is an independent federal civil rights action, not an appeal. Prior federal proceedings in Case No. 2:23-cv-04059 (D.N.J.) were dismissed on Younger abstention, statute of limitations, res judicata, and immunity grounds — not on the merits of any constitutional claim. The Third Circuit's nonprecedential per curiam affirmance (December 17, 2024, Restrepo, Matey, Chung, JJ.) and the Supreme Court's denial of certiorari (No. 25-309, November 17, 2025) are not adjudications on the merits. Dr. Jeong's forensic findings — completed after the Supreme Court's denial — have never been evaluated by any court on their merits. This complaint presents those findings to this Court for the first time.

## II. JURISDICTION AND VENUE

1.  This Court has jurisdiction under **28 U.S.C. § 1331 (Federal Question)** and **42 U.S.C. § 1983**, as this action arises under the Constitution and laws of the United States. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4). This action arises under 42 U.S.C. §§ 1983 and 1985(3) and the Fourteenth Amendment to the United States Constitution.

2.  Venue is proper in the **Camden Vicinage** of this District pursuant to **28 U.S.C. § 1391** to ensure an impartial tribunal free from the systemic bias of the Essex County infrastructure. The Newark Vicinage (Essex County) is inherently biased: the original presiding judge was a former counsel for the corporate complainant (Prudential Financial), and subsequent judicial officers have refused

to address a forensic report dated December 3, 2025, proving the central evidence is fabricated. All operative events occurred in Essex County, New Jersey — but the interests of justice require adjudication in the Camden Vicinage, where the influence of the current parties and local agencies is absent.

3. This action is timely. New Jersey's two-year statute of limitations applies to § 1983 claims. *Wilson v. Garcia*, 471 U.S. 261 (1985). Plaintiff's malicious prosecution claim has not yet accrued because the prosecution has not terminated in his favor. *McDonough v. Smith*, 588 U.S. 109 (2019). Plaintiff's Equal Protection and Due Process claims reflect ongoing constitutional violations that continue to accrue. This action is filed now to preserve earlier-accruing claims consistent with *Wallace v. Kato*, 549 U.S. 384 (2007).

4. This action is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). No conviction has been entered and Plaintiff does not seek to invalidate any conviction. Plaintiff's constitutional claims arise from conduct occurring throughout the prosecution — not solely from a conviction that has not been obtained.

5. In the event this Court determines that *Younger v. Harris*, 401 U.S. 37 (1971) abstention applies to any portion of this action, Plaintiff respectfully requests a **stay — not dismissal** — of the damages claims not redressable in the state proceeding, consistent with *Deakins v. Monaghan*, 484 U.S. 193 (1988). A taxed-costs order entered in prior proceedings does not bar this filing. It is a civil assessment of litigation expenses, not a pre-filing injunction or a restriction on Plaintiff's right to file an independent civil action.

## III. PARTIES

### A. *Plaintiff*

6. Plaintiff Kaeun Kim is an Asian American individual residing in New York. Plaintiff has been the subject of a continuous criminal prosecution in the Superior Court of New Jersey, Essex County, Criminal Division, since April 2018, on a charge of terroristic threats arising from his April 13, 2018 visit to Prudential Financial's Newark headquarters. Plaintiff appeared voluntarily, descended to the lobby without being escorted, and was not forcibly removed from the 24th floor — a fact that directly contradicts the title metadata manually authored into File Q5 of the prosecution's video evidence.

## B. Defendant Essex County Prosecutor's Office

7. Defendant Essex County Prosecutor's Office ("ECPO") is a governmental entity of Essex County, New Jersey, responsible for initiating, conducting, and continuing the criminal prosecution against Plaintiff. ECPO is a state actor under 42 U.S.C. § 1983. ECPO is subject to *Monell* entity liability for its policy and custom of accepting third-party-supplied video evidence without independent forensic authentication, actively suppressing the original recording device constituting Brady material, and continuing prosecutions in the face of unrebutted forensic evidence of fabrication. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

## C. Defendant Joseph Giordano

8. Defendant Joseph Giordano was the original Assistant Prosecutor at ECPO assigned to this case. Giordano insisted throughout the early proceedings that the edited video clips sufficed for prosecution, refused to disclose the original DVR recordings or metadata, and relied exclusively on Prudential's derivative files. Giordano accepted the six fabricated WMV files from Prudential without independent forensic authentication and presented them to the Grand Jury as authentic recordings. He is sued in his individual and official capacities. Absolute prosecutorial immunity does not protect his investigative conduct — the acceptance and authentication of evidence — which preceded or occurred contemporaneously with the initiation of charges. *Buckley v. Fitzsimmons*, 509

U.S. 259 (1993).

### D. Defendant Mira Ohm

9. Defendant Mira Ohm is the current or most recent Assistant Prosecutor at ECPO assigned to this case following Giordano's recusal. Ohm maintained that disclosure of the original DVR recordings was barred by Judge Tarantino's prior rulings — despite those rulings having been issued by a judge whose prior representation of Prudential created a material, undisclosed conflict of interest. Ohm continued to rely on the unverified footage, refused to compel DVR production, and rejected requests for forensic examination throughout her tenure. She is sued in her individual and official capacities.

### E. Defendant Prudential Financial, Inc.

10. Defendant Prudential Financial, Inc. ("Prudential") is a New Jersey corporation with its principal place of business at 751 Broad Street, Newark, NJ 07102. The forensic evidence establishes that the video files Prudential provided to ECPO — bearing internal metadata identifying Prudential's IP address (48.123.130.201, WHOIS-registered to The Prudential Insurance Company of America, Handle: PICA-3-Z) — were not authentic original recordings but secondary-processed files created between three and seven days after the incident. Prudential acted in concert with ECPO to fabricate or cause to be fabricated this evidence, thereby acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Dennis v. Sparks*, 449 U.S. 24 (1980).

### F. Defendant Robert Buhrmeister

11. Defendant Robert Buhrmeister was a Prudential security officer who, following Plaintiff's April 13, 2018 visit, provided prosecutors with statements and video files representing those materials as authentic surveillance recordings of the incident. Buhrmeister was the principal operational contact for the submission of the fabricated video evidence to ECPO. He acted in concert with state actors and

is sued individually under 42 U.S.C. §§ 1983 and 1985(3).

### G. Defendants Michael Saccento, John Strangfeld, and Caroline Feeney

**12.** Defendants Michael Saccento, John Strangfeld, and Caroline Feeney are Prudential executives who provided false allegations and sponsored or authorized the submission of fabricated video evidence to ECPO, triggering the criminal prosecution. They used their corporate influence to initiate and sustain a criminal case against a former employee without evidence of any genuine threat. They then withheld the original surveillance data, preventing verification of their representations. They are sued individually under 42 U.S.C. §§ 1983 and 1985(3).

### H. Defendant New Jersey Police and Fire Department Officers

**13.** Defendants John Doe Police Officers 1–10 are officers and agents of the New Jersey Police Department and associated local law enforcement and fire department personnel in Essex County who participated in a coordinated campaign of systemic harassment against Plaintiff spanning nine years. This harassment included persistent vehicular shadowing, coordinated use of sirens and surveillance equipment without probable cause, and coercive law enforcement presence inconsistent with the Fourth Amendment's reasonableness baseline. Their identities will be established through discovery. They are sued in their individual capacities for non-judicial, non-prosecutorial conduct. They acted under color of state law at all relevant times. 42 U.S.C. § 1983.

### I. Judicial Officers (Individual Capacity — Non-Judicial Acts Only)

**14.** To the extent any judicial officer engaged in conduct that was administrative or investigative rather than judicial in nature — including the failure to disclose a material conflict of interest, the issuance of orders designed to protect a corporate benefactor rather than apply the law, and coordination with prosecutorial actors to suppress exculpatory evidence — such individuals are named as Defendants in

their individual capacities for those specific non-judicial acts. Absolute judicial immunity does not extend to administrative conduct or to acts taken in the complete absence of jurisdiction. *Stump v. Sparkman*, 435 U.S. 349 (1978); *Mireles v. Waco*, 502 U.S. 9 (1991). The identity of such individuals and the specific acts at issue will be further defined through discovery.

### J. John Doe Defendants

15.  Defendants John Doe Prosecutors 1–3 and John Doe Defendants 1–10 are individuals and entities whose identities will be established through discovery, who participated in the fabrication of evidence, suppression of the original DVR, or the conspiracy to deprive Plaintiff of his civil rights.

## IV. STATEMENT OF FACTS

### A. Background: Plaintiff's April 13, 2018 Visit to Prudential Headquarters

14.  On April 13, 2018, Plaintiff Kaeun Kim, a former employee of Prudential Financial, Inc., visited Prudential's corporate headquarters at 751 Broad Street, Newark, New Jersey. Plaintiff arrived at the Plaza Lobby at approximately 9:13 AM and ascended toward the 24th floor. He voluntarily descended to the lobby **without getting off from the elevator to the 24th floor** — without being escorted or directed by security or any Prudential personnel — and was detained by security at approximately 10:10 AM. Newark Police Department officers arrived and escorted Plaintiff out of the building. No weapon was used or displayed. No physical altercation occurred. This fact directly contradicts any representation that Plaintiff intruded upon or was forcibly removed from the 24th floor.

15.  Following Plaintiff's departure, Prudential security officer Robert Buhrmeister and executives Michael Saccento, John Strangfeld, and Caroline Feeney provided ECPO with statements alleging trespass and terroristic threats, and provided

ECPO with seven digital video files representing them as authentic surveillance recordings. Based solely on those representations, ECPO charged Plaintiff with terroristic threats. The prosecution has been continuously pending since April 2018 — nearly nine years — without final adjudication.

### B. The Seven Video Files: What Was Submitted and What They Actually Are

16.  The prosecution's video evidence consists of seven digital files. Dr. Jeong's Forensic Examination Report (Exhibit B) sets forth the complete forensic analysis of all seven files. The files are:

| File | File Name as Submitted | Size | Format |
|------|------------------------|------|--------|
| Q1 | Specimen Q1 04.13.18 09.13am Plaza Lobby K. Kim (1).wmv | 16.8 MB | WMV |
| Q2 | Specimen Q2 04.13.18 09.18am Plaza 24th Floor Video of Mr Kim.wmv | 27.2 MB | WMV |
| Q3 | Specimen Q3 04.13.18 09.37am Plaza Lobby K. Kim.wmv | 7.91 MB | WMV |
| Q4 | Specimen Q4 04.13.18 09.37am V2. Plaza Lobby K. Kim.wmv | 5.42 MB | WMV |
| Q5 | Specimen Q5 04.13.18 10.10am Plaza Lobby K. Kim (NWK PD).wmv | 2.36 MB | WMV |
| Q6 | Specimen Q6 SRS-2018-009326 Plaza Lobby K. Kim Sign in 9.13am Video2 (00372852).wmv | 10.6 MB | WMV |
| Q7 | Specimen Q7 SRS-2018-009326 Plaza Lobby K. Kim Sign in 9.23am (00372851).avi | 12.8 MB | AVI |

17.  As established by Dr. Jeong's forensic examination, six of these seven files (Q1–Q6) are not authentic original DVR recordings. They are screen-capture re-encodings produced in a Windows 7 SP1 environment using Microsoft Expression Encoder, created between three and seven days after April 13, 2018. The complete SHA-256 cryptographic hash values for each file, establishing

forensic chain of custody, are set forth in Exhibit B, Table 1.

### C. State-Court Proceedings and Judicial Conflicts of Interest

18. **Judge Tarantino's undisclosed conflict.** Judge Mayra Tarantino presided over the early proceedings in this case. Judge Tarantino had previously represented Prudential Financial. She did not disclose this prior representation. During her tenure, Plaintiff filed multiple pretrial motions invoking *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959), seeking production of the original DVR recordings, exculpatory materials, and forensic authentication. Judge Tarantino either denied or ignored these requests and pressured Plaintiff to accept a plea or a civil restraining order favorable to Prudential. Her rulings denying DVR production were issued without examination of the merits and without disclosure of her conflict.

19. **Recusal and its aftermath.** After more than one year of litigation — during which Plaintiff had been charged with a felony and subjected to restrictive conditions — both Judge Tarantino and Prosecutor Giordano recused themselves. The case was reassigned to Judge Mark Ali and Assistant Prosecutor Mira Ohm **after the other two judges had biasedly denied Plaintiff's foundational motions.** Rather than conduct an independent review of the evidentiary questions that Tarantino and Giordano had foreclosed through biased rulings, they maintained the identical posture: refusing authentication motions, refusing to compel DVR production, rejecting forensic examination requests. Prosecutor Ohm relied on Judge Tarantino's conflict-tainted orders as binding precedent despite those orders having been issued by a judge with an undisclosed material conflict of interest. No court has ever held an evidentiary hearing on the authenticity of the video evidence. No judge has ever viewed the original recording devices.

20. **Bench trial.** This matter proceeded as a bench trial — removing the jury as constitutional fact-finder in a case where the prosecution's entire evidence base has now been forensically established as inauthentic.

21. **Chain of custody unverified.** At no point has the original DVR device, storage media, or any primary recording hardware been produced. Despite Plaintiff's Video Submission Form and Exhibit G (Third Circuit Case No. 24-1448, ECF No. 43, Appendix, Pa. 26, Exhibits A–G) demonstrating anomalies consistent with tampering, the prosecution has continued to rely exclusively on Prudential's derivative files.

### D. Prior Federal Civil-Rights Action: Case No. 2:23-cv-04059 (D.N.J.)

22. In July 2023, Plaintiff filed a pro se civil-rights complaint under 42 U.S.C. § 1983 in this Court (Case No. 2:23-cv-04059) against Prudential, Buhrmeister, Ohm, and Ali, alleging malicious prosecution, fabrication of evidence, due process violations, and Brady violations, and seeking damages and declaratory relief. Plaintiff did not seek an injunction to halt the state prosecution.

23. Magistrate Judge Jose Almonte denied discovery requests via text-only orders, blocking access to the original video and metadata. District Judge Susan D. Wigenton dismissed the suit citing statute of limitations, res judicata, judicial immunity, and Younger abstention. A Third Circuit panel (Restrepo, Matey, and Chung, JJ.) affirmed per curiam on December 17, 2024 in a nonprecedential opinion, with minimal analysis of the bad-faith and due process allegations. A judicial-misconduct complaint was dismissed as "merits-related."

24. Plaintiff filed a petition for certiorari (No. 25-309). The Supreme Court denied certiorari on November 17, 2025 — before Dr. Jeong's forensic report was complete. Plaintiff filed a petition for rehearing attaching Dr. Jeong's Declaration. That petition was denied. **None of these rulings was an adjudication on the merits of any constitutional claim. Dr. Jeong's forensic findings have never been evaluated by any court.**

### E. Fabricated Evidence: The Independent Forensic Report Confirms the Video Is a Forgery

**25.** The independent forensic report of Dr. Doowon Jeong, Ph.D. (executed December 3, 2025, attached as Exhibit B) confirms the video is a forgery. Six of the seven video files submitted as authentic surveillance recordings of April 13, 2018 bear creation timestamps of three to seven days after that date, the binary encoding signature of Windows 7 SP1 screen-capture software confirmed by virtual machine reconstruction, and manually authored metadata titles that no DVR could have generated. This is not a disputed factual question — it is a technically verifiable binary finding. The prosecution's entire evidentiary foundation is a manufactured fabrication.

**26.** The original DVR recording device — the one item that would authenticate or expose the Subject Files — has been suppressed for nine years despite repeated formal demand. No court has held an evidentiary hearing on authenticity. No judge has viewed the original DVR. The fabrication has never been challenged in a neutral forum.

### F. Systemic Harassment: Coordinated Use of Sirens and Surveillance for Nine Years

**27.** Throughout the nine-year pendency of this prosecution, Plaintiff has been subjected to a coordinated campaign of systemic harassment by local law enforcement and fire department personnel in Essex County. This harassment included persistent vehicular shadowing by New Jersey police and officers associated with the Essex County Prosecutor's Office, coordinated use of sirens and surveillance equipment in proximity to Plaintiff without probable cause or legitimate law enforcement purpose, and coercive law enforcement presence designed to intimidate and harass Plaintiff. This conduct was conducted under color of state law without probable cause and is inconsistent with the Fourth Amendment's reasonableness baseline. It constitutes an independent, ongoing constitutional violation.

### G. Betrayal of Counsel: Prior Attorneys Failed to Act

28. Over the course of nine years of criminal proceedings, Plaintiff retained five to six successive attorneys to represent him. Each failed to take the fundamental steps necessary to challenge the prosecution's video evidence — including filing motions to compel production of the original DVR, retaining a forensic expert to examine the Subject Files, or challenging the authenticity of the prosecution's evidence before the trial court. Plaintiff alleges upon information and belief that these successive failures were not the product of professional incompetence alone, but reflect a pattern of non-representation consistent with collusion with or capitulation to state actors and institutional interests aligned against Plaintiff. It was only through Plaintiff's own initiative — retaining Dr. Jeong independently — that the forensic fabrication was established.

## V. THE NEWLY DISCOVERED FORENSIC EVIDENCE — DR. JEONG'S DECLARATION (EXHIBIT A) AND FORENSIC REPORT (EXHIBIT B)

| | |
|---|---|
| **EXHIBITS A & B:** | The sworn Declaration of Dr. Doowon Jeong, Ph.D. (Exhibit A) and the Digital Forensic Examination Report for Seven Video Files (Exhibit B) are incorporated herein by reference in their entirety. The following paragraphs summarize the seven findings set forth in those documents. The complete technical analysis, methodology, equipment specifications, SHA-256 hash tables, WMFSDK version strings, channel timestamp screenshots, duration discrepancy tables, IP/WHOIS records, and virtual machine reconstruction results are set forth in Exhibit B. Dr. Jeong's qualifications, institutional affiliation, and sworn statement are set forth in Exhibit A. |

**Expert:** Dr. Doowon Jeong, Ph.D. — Associate Professor, Department of Forensic Sciences, Sungkyunkwan University (SKKU); Director, Cyber Security & Digital Forensic Laboratory; 25-2, Sungkyunkwan-ro, Jongno-gu, Seoul, 03063, Republic of Korea; doowon@skku.edu; +82-2-760-0356. Forensic Examiners: Byeongjun Kim; Minsoo Kim. Executed: December 3, 2025, Seoul, Republic of Korea.

### A. Finding 1 — Non-Contemporaneous Creation Timestamps

25. A genuine DVR surveillance recording bears a creation timestamp reflecting the date the footage was written to storage — the date of the recorded event. The creation timestamps extracted from the Subject Files demonstrate that six of the seven files cannot be original recordings of April 13, 2018:

| File | Creation Timestamp | Interval After Incident | Forensic Assessment |
|---|---|---|---|
| Q1 (W MV) | 04/20/2018 11:21:59 | +7 days | NOT an original recording |
| Q2 (W MV) | 04/16/2018 15:32:48 | +3 days | NOT an original recording |
| Q3 (W MV) | 04/20/2018 11:24:02 | +7 days | NOT an original recording |
| Q4 (W MV) | 04/20/2018 11:23:20 | +7 days | NOT an original recording |
| Q5 (W MV) | 04/20/2018 11:49:05 | +7 days | NOT an original recording |
| Q6 (W MV) | 04/20/2018 11:20:34 | +7 days | NOT an original recording |
| Q7 (A VI) | 04/13/2018 09:23:25 | Same day | Consistent with incident date |

26. Files Q1 and Q3–Q6 were created within a 28-minute window (11:20–11:49 AM) on April 20, 2018 — one week after the incident — consistent with a single batch screen-capture encoding session. Original DVR recordings are produced in real time, individually, as events occur. They are not produced in simultaneous batches. The clustering of five files within 28 minutes on a date one week after the incident is itself conclusive evidence of post-incident fabrication. *See* Exhibit B, Section III.A.

### B. Finding 2 — WMFSDK Encoding Signature: Windows 7 SP1 / Microsoft Expression Encoder

27. Binary and metadata analysis of Files Q1–Q6 using 010 Editor (v.6.0.1) revealed that each WMV file contains the identical WMFSDK version string: 12.0.7601.17514. This is the categorical binary fingerprint of the Windows Media Format SDK as compiled into Windows 7 Service Pack 1. It is not generated by DVR hardware of any manufacturer known to Dr. Jeong's laboratory.

28. Dr. Jeong's laboratory performed confirmatory virtual machine reconstruction: a Windows 7 SP1 environment was configured and screen-capture recording was performed using **Microsoft Expression Encoder, version 4.0.4276.0**. The resulting output file contained the identical WMFSDK string 12.0.7601.17514. Comparison tests on Windows 10 22H2 (WMFSDK 12.2.19041.6456) and Windows 11 25H2 (WMFSDK 12.2.26100.7171) produced entirely different version strings. *See* Exhibit B, Section III.B and Table 2.

| Operating System | WMFSDK Version String | Matches Files Q1–Q6? |
|---|---|---|
| Windows 7 SP1 | 12.0.7601.17514 | YES — exact match in all six WMV files |
| Windows 10 22H2 | 12.2.19041.6456 | No — different signature |
| Windows 11 25H2 | 12.2.26100.7171 | No — different signature |

29. The conclusion is binary: Files Q1–Q6 were encoded in a Windows 7 SP1 environment using screen-capture software. The WMFSDK version string is not interpretive — it is the literal binary output of a specific software environment embedded in each file. A DVR does not generate this string. *See* Exhibit B, Section III.B.

| DR.JEONG'S CONCLUSION (Exhibit A, ¶ 7): | "The majority of the video evidence submitted in this matter is not forensically authentic and does not constitute a reliable, unaltered record of the alleged April 13, 2018 incident." The data "suggest a pattern of post-incident fabrication or manipulation, involving screen capture, editing, and manual file generation." |
|---|---|

### C. Finding 3 — Manually Authored Title Metadata

30. In the WMV/ASF file format, the 'Title' metadata attribute is populated only when a user manually enters text during the encoding process. DVR systems do not add descriptive human-authored titles. The following manually authored titles were found embedded in the Subject Files — inconsistent with any automated DVR export: *See* Exhibit B, Section III.C.

| File | Title Metadata | DVR-Generated? |
|---|---|---|
| Q1 | Plaza Lobby K. Kim Sign in 9.13am | No — manually authored |
| Q2 | (none) | — |
| Q3 | Plaza Lobby K. Kim Sign in 9.37am | No — manually authored |
| Q4 | Plaza Lobby K. Kim Sign in 9.37am Video2 | No — manually authored |
| Q5 | Plaza Lobby K. Kim 10.10am Police escort out of building | No — manually authored |
| Q6 | Plaza Lobby K. Kim Sign in 9.13am Video2 | No — manually authored |
| Q7 | (none) | — |

31. The title in File Q5 — *"Plaza Lobby K. Kim 10.10am Police escort out of building"* — describes an outcome that had not yet occurred at the time recording began. A DVR cannot author a title describing a future event. This title was manually written by a human being after the fact, during the screen-capture encoding session on April 20, 2018, by someone with full knowledge of the day's events who deliberately curated the title to describe the content. This constitutes additional independent evidence of post-incident human fabrication. *See* Exhibit

B, Section III.C.

### D. Finding 4 — File Q2: Screen Recording of a DVR Playback Viewer

32. File Q2 — **central to the prosecution** — is not a direct DVR export. It displays an **abnormal resolution with a cropped bottom edge, misaligned timestamps, mismatched duration metadata, and abrupt frame transitions**. These are the hallmarks of selective editing. The clip does not reflect a continuous, unaltered recording. Three concurrent technical anomalies independently establish this: (i) **non-standard resolution of 1524×576 pixels** — not a standard DVR output format; consistent with screen-capture of a DVR viewer window that did not fill the full computer display; (ii) **visibly cropped lower frame** — the lower portion of every frame is cut off, consistent with a screen-capture window that excluded the bottom of the DVR viewer interface and its timeline controls; and (iii) **four-channel multi-view display** — Q2 simultaneously displays four camera channels in quad format, the standard display mode of a DVR viewer application, not a direct single-channel DVR export. File Q2 is a recording of someone watching DVR footage on a computer screen and recording that screen — not an authentic surveillance record of April 13, 2018. *See* Exhibit B, Section III.D.

### E. Finding 5 — 16-Second Timestamp Divergence in File Q2

33. In a genuine DVR system, all cameras share a single master clock. Simultaneous channels cannot display different timestamps for the same moment. Analysis of File Q2 at the 1:57 playback mark reveals the following timestamp divergence across four simultaneous channels, as documented in Exhibit B, Table 3:

| Channel | Timestamp at 1:57 Mark | Divergence from Channel 1 |
| --- | --- | --- |
| Channel 1 | 4/13/2018 9:19:54 AM | — (baseline) |
| Channel 2 | 4/13/2018 9:19:51 AM | 3 seconds |

| Channel 3 | 4/13/2018 9:19:53 AM | 1 second |
| Channel 4 | 4/13/2018 9:19:38 AM | 16 seconds |

**34.** A 16-second divergence between simultaneous channels recording the same moment is technically impossible in an authentic DVR recording. It is conclusive evidence that the footage in File Q2 was assembled from non-contiguous segments captured at different times — edited and re-assembled before screen-capture encoding. *See* Exhibit B, Section III.E.

### F. Finding 6 — 47–55 Seconds of Missing Footage in File Q2

**35.** The total container duration of File Q2 is 5 minutes 11 seconds (5:11). The actual content timestamp spans within each of the four displayed channels, as documented in Exhibit B, Table 4, are:

| Ch. | Timestamp at 0:00 | Timestamp at 5:11 | Content Span | Gap |
|---|---|---|---|---|
| 1 | 9:18:12 AM | 9:22:28 AM | 4 min 16 sec | 55 sec missing |
| 2 | 9:18:09 AM | 9:22:25 AM | 4 min 16 sec | 55 sec missing |
| 3 | 9:18:11 AM | 9:22:27 AM | 4 min 16 sec | 55 sec missing |
| 4 | 9:18:02 AM | 9:22:26 AM | 4 min 24 sec | 47 sec missing |

**36.** A genuine continuous DVR recording cannot have internal content 47–55 seconds shorter than the file container duration. This discrepancy is consistent with selective editing — deletion of specific segments of the underlying footage — followed by re-encoding into a container of approximately the original duration. Material was removed and the resulting gap was concealed by re-encoding. *See* Exhibit B, Section III.F.

### G. Finding 7 — Prudential's IP Address in File Q7 and Q7's Limited Probative Value

37. File Q7 (AVI format) bears a creation timestamp of 04/13/2018 09:23:25, consistent with the incident date. File Q7 contains embedded metadata identifying IP address 48.123.130.201 and recording-location data: "NJ-Plaza Lobby Turnstile East, IPRD" and "NJ-New ark Plaza NVR 1," timezone Eastern Standard Time. WHOIS lookup confirms IP address 48.123.130.201 is registered to **The Prudential Insurance Company of America**, 761 Broad Street, Newark, NJ 07102-3777 (Handle: PICA-3-Z). This confirms Prudential's direct and exclusive control over the recording system and network from which all seven files were derived. *See* Exhibit B, Section III.G.

38. File Q7 alone cannot authenticate the prosecution's evidence. Full verification requires access to the original DVR device and storage medium — access that has been denied throughout this proceeding. Dr. Jeong notes that Q7 may represent a genuine excerpt strategically produced to lend credibility to an otherwise fabricated evidence set. Submission of one apparently authentic file alongside six demonstrably inauthentic ones does not rehabilitate the evidence; it raises additional questions about selective production. *See* Exhibit B, Section III.G.

### H. The Original DVR Has Never Been Produced — Brady Violation

39. At no point during nearly nine years of proceedings has the original DVR recording device or storage medium been produced. The original device is the single most probative item of evidence in this case: it would permit direct comparison of the device's encoding specifications against the WMFSDK signatures in Q1–Q6; verification of the device's internal clock against the creation timestamps; confirmation of chain of custody; and determination of whether original footage was deleted, modified, or overwritten after April 13, 2018.

40. ECPO — first through Giordano, then through Ohm — has actively and continuously opposed every motion to compel production of the original DVR.

Judge Tarantino, while subject to an undisclosed conflict of interest, denied the foundational motions. Her conflict-tainted orders were subsequently relied upon by Ohm as barring further disclosure. The WMFSDK encoding signatures in Q1–Q6 now demonstrate that this suppression served a purpose: producing the original device would have exposed the discrepancy between the device's native encoding specifications and the Windows 7 SP1 screen-capture signatures embedded in the six WMV files. This is Brady suppression of the highest order. *Brady v. Maryland*, 373 U.S. 83 (1963); *State v. Nelson*, 155 N.J. 487 (1998).

> ■ **PAGES 12–18 OF THIS COMPLAINT — THE FORENSIC FINDINGS SUMMARIZED IN PARAGRAPHS 25–40 ABOVE — ARE SUPPORTED IN THEIR ENTIRETY BY AND SHOULD BE READ IN CONJUNCTION WITH: EXHIBIT A: Sworn Declaration of Dr. Doowon Jeong, Ph.D. EXHIBIT B: Digital Forensic Examination Report for Seven Video Files Exhibit A and Exhibit B are attached after page 29 of this filing.**

## VI. CAUSES OF ACTION

### *Count I — Equal Protection (42 U.S.C. § 1983) Racially Discriminatory Prosecution — Against All Defendants*

41. Plaintiff realleges all preceding paragraphs.

42. The Equal Protection Clause prohibits state actors from selectively enforcing the law against individuals on the basis of race or national origin. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886); *United States v. Armstrong*, 517 U.S. 456 (1996).

43. Defendants, acting under color of state law, initiated and have maintained a criminal prosecution against Plaintiff — an Asian American individual — for nearly nine years, on the basis of forensically discredited fabricated evidence. Defendants accepted and relied upon six screen-captured WMV files with post-incident timestamps and Windows 7 SP1 encoding signatures without

independent authentication, while not subjecting similarly situated non-Asian individuals to comparable prosecution on similarly deficient evidence.

44.   Prudential officials Buhrmeister, Saccento, Strangfeld, and Feeney, acting in concert with ECPO, used their corporate and institutional influence to initiate and sustain a prosecution against a former employee of Asian descent. The nine-year duration of this prosecution, in the face of unrebutted forensic evidence of fabrication, constitutes intentional discrimination on the basis of race and national origin. As a direct result, Plaintiff has suffered the compensable damages described in Section VII. Plaintiff seeks compensatory and punitive damages.

## *Count II — Due Process: Fabricated Evidence and Brady Suppression (42 U.S.C. § 1983) Against All Defendants*

45.   Plaintiff realleges all preceding paragraphs.

46.   The Due Process Clause prohibits the knowing use of fabricated evidence and the suppression of material exculpatory evidence. *Napue v. Illinois*, 360 U.S. 264 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

47.   Six of the seven video files submitted as the sole material evidence of this prosecution were created between three and seven days after the alleged incident and bear the binary encoding fingerprints of screen-capture software — not DVR hardware. The deliberate suppression of the original DVR — the one device that would expose this fabrication — is an active, ongoing Brady violation. ECPO, through Giordano and Ohm, actively and continuously opposed every motion to compel production of the original recording device, with the effect of concealing the discrepancy the WMFSDK encoding signatures would have revealed.

48.   Judge Tarantino's conflict-tainted orders denying DVR production, relied upon by Ohm as binding precedent, were issued by a judge with an undisclosed material

conflict. Those orders were not valid exercises of judicial authority and cannot legitimately bar the disclosure they purported to foreclose.

49. Eight years of criminal prosecution predicated on evidence that binary forensic analysis establishes to be screen-capture re-encodings, combined with active suppression of the original recording device, constitutes a deprivation of liberty without due process of law. Plaintiff seeks compensatory and punitive damages for this violation.

## Count III — Malicious Prosecution (42 U.S.C. § 1983) Against All Defendants

50. Plaintiff realleges all preceding paragraphs.

51. A malicious prosecution claim under § 1983 requires initiation or continuation of criminal proceedings without probable cause and with malice, resulting in deprivation of a constitutionally protected liberty interest. *Kossler v. Crisanti*, 564 F.3d 181 (3d Cir. 2009); *Manuel v. City of Joliet*, 580 U.S. 357 (2017). No conviction has been entered; *Heck v. Humphrey* does not bar this claim. This claim is filed now under *Wallace v. Kato*, 549 U.S. 384 (2007), to preserve it against limitations arguments, while noting that it has not yet accrued under *McDonough v. Smith*, 588 U.S. 109 (2019), as the prosecution has not terminated in Plaintiff's favor.

52. No reasonable prosecutor possessing Dr. Jeong's findings — six files bearing post-incident creation timestamps; WMFSDK encoding signature `12.0.7601.17514` confirmed by virtual machine reconstruction to correspond to screen-capture encoding in Windows 7 SP1; manually authored human titles describing future events; non-standard 1524×576 resolution consistent with screen recording; a 16-second timestamp divergence across simultaneous channels; and a 47–55 second content-to-container duration gap — could maintain that probable cause exists to continue this prosecution. The nine-year continuation in the face of this unrebutted evidence constitutes malice. Prudential

officials who submitted the fabricated files are jointly liable as private actors who conspired with state officials. Plaintiff seeks compensatory and punitive damages.

### Count IV — Civil Conspiracy to Deprive Civil Rights (42 U.S.C. § 1985(3)) Against All Defendants

53. Plaintiff realleges all preceding paragraphs.

54. Section 1985(3) prohibits conspiracies to deprive persons of the equal protection of the laws. *Griffin v. Breckenridge*, 403 U.S. 88 (1971). Defendants Prudential, Buhrmeister, Saccento, Strangfeld, Feeney, Giordano, and Ohm entered into an agreement to: (i) produce and provide fabricated screen-captured video files as authentic surveillance recordings; (ii) present those files to the Grand Jury without forensic authentication; (iii) sustain the prosecution for nine years on fabricated evidence; (iv) suppress the original DVR throughout; (v) rely on conflict-tainted adverse rulings to perpetuate that suppression; and (vi) deprive Plaintiff of his constitutional rights, motivated at least in part by racial animus against Plaintiff as an Asian American individual and by corporate self-interest in protecting Prudential from accountability. Plaintiff seeks compensatory and punitive damages.

## VII. DAMAGES

55. As a direct and proximate result of the unconstitutional conduct of all Defendants — the fabrication and submission of digital video evidence, the suppression of the original DVR, the nine-year continuation of a malicious prosecution predicated on that fabricated evidence, and the structural judicial conflicts that prevented any neutral adjudication of the foundational authenticity questions — Plaintiff has suffered, and continues to suffer, the following documented human rights violations and socio-economic harms:

- **Loss of employment and career destruction.** Plaintiff suffered loss of employment opportunities, particularly in regulated industries such as finance and law, due to public records of a pending felony charge and unjust prosecutorial representations. The continuous pendency of the charge — now spanning nearly nine years — has made it impossible to obtain employment in Plaintiff's professional field, destroying his earning capacity and professional standing.

- **Limitations on international travel and reputational destruction.** The unresolved criminal proceedings resulted in travel restrictions, reputational damage, fear of unjust enforcement actions at borders, and the stigma of public infamy associated with a pending felony charge. Plaintiff has been unable to travel internationally without the risk of adverse immigration consequences arising directly from charges sustained on fabricated evidence.

- **Civic disenfranchisement.** Plaintiff has been unable to engage in political, public, or community advocacy roles due to the chilling effect of being under continuous legal threat. The perpetual pendency of fabricated felony charges has functionally excluded Plaintiff from civic and professional participation, constituting a deprivation of First and Fourteenth Amendment rights.

- **Psychological trauma and health deterioration.** Continuous fear of arbitrary arrest, the trauma of nine years of wrongful prosecution, and persistent shadowing by law enforcement — despite no conviction — have curtailed Plaintiff's ordinary exercise, sleep, and social functioning, producing severe and documented deterioration in physical and mental health. The cumulative psychological burden of nine years of legally sustained false accusation has caused injury that no monetary award can fully remedy.

- **Civil-liberty deprivations and chilling of constitutionally protected conduct.** Repeated orders and conditions predicated on falsified charges have chilled Plaintiff's speech and freedom of movement — including travel limits and fear

of retaliation — creating the functional equivalent of ongoing extrajudicial harassment and surveillance inconsistent with the First and Fourth Amendments.

- **Surveillance without probable cause.** Persistent vehicular shadowing by New Jersey police and officers associated with the Prosecutor's Office reflects coercive law enforcement presence and constructive surveillance conducted without probable cause and inconsistent with the Fourth Amendment's reasonableness baseline. This conduct, sustained throughout the prosecution, has compounded the psychological harm and constituted an ongoing deprivation of Plaintiff's right to be free from unreasonable seizure and surveillance.

- **Adverse immigration and professional licensing consequences.** The pending felony charge has produced adverse consequences for Plaintiff's immigration status and has barred or restricted access to professional licenses, compounding the economic harm flowing from the fabricated prosecution over nine years.

- **Financial harm.** Plaintiff has incurred substantial costs over nine years of state and federal litigation — including legal fees, expert forensic analysis costs, court filing fees, and costs associated with repeated motions — all necessitated by the prosecution's deliberate refusal to produce the original DVR or to address the authenticity of its evidence.

- **Social stigma and harm to personal relationships.** The nine-year pendency of a felony charge, publicized through court records, has caused enduring social stigma, damaged personal relationships, and isolated Plaintiff from professional and personal communities, producing harms that have compounded with each successive year of prosecution on fabricated evidence.

At every stage of these proceedings, Plaintiff sought redress through proper legal channels — including multiple applications to compel disclosure of the original surveillance DVR — only to be met with silence, delay, biased denial, or summary

dismissal by conflicted judicial officers. These failures directly implicate the Fifth and Fourteenth Amendments, both of which guarantee due process and equal protection under the law. The total compensable harm suffered by Plaintiff is not merely a sum of discrete economic losses; it is the aggregate consequence of nine years of deliberate constitutional deprivation inflicted by the coordinated action of a major corporation and state prosecutorial machinery acting in concert.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kaeun Kim respectfully requests that this Court enter judgment in his favor and against all Defendants as follows:

**PRIMARY RELIEF — DAMAGES:**

- Award Plaintiff compensatory damages in an amount to be determined at trial, sufficient to fully compensate him for all injuries described in Section VII;

- Award Plaintiff punitive damages against the individual Defendants — Giordano, Ohm, Buhrmeister, Saccento, Strangfeld, and Feeney — in amounts sufficient to punish willful constitutional violations and deter future misconduct;

- Award Plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

**SECONDARY RELIEF — DECLARATORY:**

- Issue a declaratory judgment that Defendants' past conduct — the submission, acceptance, and reliance on fabricated digital video evidence; the suppression of the original DVR; the prosecution of Plaintiff under Judge Tarantino's conflict-tainted orders; and the continuation of the prosecution for nine years on a fabricated evidentiary foundation — violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States

Constitution. This declaration is backward-looking only and does not direct the conduct of the ongoing state proceeding;

## ALTERNATIVE RELIEF — STAY REQUEST (Deakins / Wallace):

> *In the alternative, in the event this Court determines that Younger abstention applies to any portion of this action, Plaintiff respectfully requests that the Court **stay rather than dismiss** the damages claims, which are not redressable in the state criminal proceeding, consistent with Deakins v. Monaghan, 484 U.S. 193 (1988), and Wallace v. Kato, 549 U.S. 384 (2007). A stay preserves Plaintiff's claims against limitations, keeps this action on the federal docket pending resolution of the state proceeding, and is the remedy mandated by Deakins for damages claims not available in state court.*

## OTHER RELIEF:

- Order such other and further relief as this Court deems just, equitable, and appropriate.

## IX. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury on all issues so triable.

## X. CERTIFICATION PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1746

I, Kaeun Kim, certify that to the best of my knowledge, information, and belief, formed after reasonable inquiry, this Amended Complaint: (1) is not being presented for any improper purpose; (2) the claims and legal contentions are warranted by existing law or a nonfrivolous argument for extending it; and (3) the factual contentions have

evidentiary support or will likely have such support after reasonable opportunity for further investigation and discovery.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

**KAEUN KIM**, Plaintiff Pro Se

P.O. Box 7084 | New York, NY 10116

Telephone: (718) 908-9008 | Email: fceakkim@aol.com

Date: March __23__ , 2026

**EXHIBIT LIST (TWO EXHIBITS ONLY):**

- **Exhibit A:** Sworn Declaration of Dr. Doowon Jeong, Ph.D. — Associate Professor of Forensic Sciences, Sungkyunkwan University; Director, Cyber Security & Digital Forensic Laboratory. Executed December 3, 2025, Seoul, Republic of Korea. (2 pages) — See paragraphs 25–40 and the references

therein.

- **Exhibit B:** Digital Forensic Examination Report for Seven Video Files — Sungkyunkwan University Department of Forensic Sciences, Cyber Security & Digital Forensic Laboratory. Forensic Examiners: Byeongjun Kim; Minsoo Kim. Executed December 3, 2025, Seoul, Republic of Korea. (15 pages) — See paragraphs 25–40 and the data tables, hash values, WMFSDK version comparisons, channel timestamp analyses, duration discrepancy measurements, IP/WHOIS records, and virtual machine reconstruction results set forth therein.

Exhibit A (Declaration) and Exhibit B (Report) are incorporated after page 29 of this filing.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY — CAMDEN VICINAGE**

## SUMMARY OF MATERIAL EVIDENCE: VIDEO FABRICATION

Re: **Exhibit A** — Declaration of Dr. Doowon Jeong, Ph.D. • **Exhibit B** — Independent Forensic Analysis Report
Kaeun Kim v. Essex County Prosecutor's Office, et al. — Docket No. 18-08-02744-I

### TO THE HONORABLE COURT:

The Plaintiff submits this summary to highlight the critical findings of the independent forensic analysis executed on **December 3, 2025** (Exhibit A: Declaration of Dr. Doowon Jeong, Ph.D., Sungkyunkwan University, Seoul, Republic of Korea; **Exhibit B**: Full Forensic Examination Report), which proves that the central video evidence used by the Essex County Prosecutor's Office for nine years is a **fraudulent fabrication.**

### KEY FINDINGS OF VIDEO FORGERY:

- **Post-Incident Creation & Temporal Inconsistency (Exhibit B, Findings 1 & 5):**
  - ■ *Six of seven prosecution video files were created 3–7 days after April 13, 2018 — five in a single 28-minute batch session on April 20. File Q2 shows a **16-second timestamp divergence** between simultaneous channels, technically impossible in authentic DVR footage, confirming the video sequence was manually edited to create a false narrative of events.*

- **Digital Encoding Artifacts of Forgery (Exhibit B, Finding 2):**
  - ■ *Binary-level analysis identifies the WMFSDK encoding signature **12.0.7601.17514** — the definitive marker of Windows 7 SP1 screen-capture software (Microsoft Expression Encoder 4.0.4276.0), confirmed by virtual machine reconstruction. DVR hardware does not produce this signature. These are definitive markers of digital fabrication, not authentic, unedited surveillance footage.*

- **Metadata Discrepancies & Re-Encoding (Exhibit B, Findings 3 & 4):**
  - ■ *Five files contain **manually authored title metadata** (e.g., "Police escort out of building") that no DVR can generate. File Q2 displays a non-standard resolution (1524×576), cropped bottom frame, and 47–55 seconds of missing content — confirming the video was re-rendered and altered after the alleged event.*

- **Chain of Custody Violation & Brady Suppression (Exhibit B, Findings 6 & 7):**
  - ■ *The Essex County infrastructure has relied on this "shadow evidence" for nine years. Prudential's IP address (**48.123.130.201**, WHOIS: Prudential Insurance, Newark NJ) is embedded in File Q7, confirming exclusive corporate control over the source recordings. Despite repeated formal demands, the **original DVR has never been produced** — withheld to conceal the fabrication.*

**CONCLUSION:** The attached Declaration (Exhibit A) and Forensic Report (Exhibit B) provide scientific, binary, and irrefutable proof that Plaintiff has been subjected to **nine years of malicious prosecution** based on forged evidence. This constitutes a fundamental violation of Plaintiff's Constitutional Due Process rights under the **14th Amendment** and warrants immediate dismissal of all charges with prejudice.

**EXHIBIT A: Declaration of Dr. Doowon Jeong, Ph.D. — Sungkyunkwan University, Seoul, Republic of Korea — Executed December 3, 2025 | EXHIBIT B: Digital Forensic Examination Report for Seven Video Files — Executed December 3, 2025**

*Respectfully submitted by: Kaeun Kim, Plaintiff Pro Se — P.O. Box 7084, New York, NY 10116 — (718) 908-9008 — fceakkim@aol.com — Dated: March 23, 2026*